**ALLEN et al.**

v.

**CAMP GANEDEN, Inc.**

**No. 279, Docket 23099.**

United States Court of Appeals,
Second Circuit.

Argued June 10, 1954.

Decided July 2, 1954.

Francis C. Dale, Cold Spring, N. Y. (Leone Pecoraro, Peekskill, N. Y., of counsel), for appellants.

Robert I. Ruback, New York City (Sydney Basil Levy, New York City, of counsel), for appellee.

Before CHASE, Chief Judge, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

The district judge, on motion of the alleged bankrupt, dismissed an amended petition in bankruptcy. This petition alleged two acts of bankruptcy. One was that the alleged bankrupt, while insolvent, and within four months before the filing of the bankruptcy petition, had suffered and permitted a creditor to obtain a mechanic's lien upon the debtor's property. The petitioning creditors contend that, within the meaning of Section 3, sub. a(3) of the Bankruptcy Act,[1] this mechanic's lien was obtained "through legal proceedings". We do not agree with this contention; see In re Emslie, 2 Cir., 102 F. 291. Our decision in In re Airmont Knitting & Un-

1. 11 U.S.C.A. § 21, sub. a (3).

dergarment Co., 2 Cir., 182 F.2d 740, is not in point. There a creditor, who had obtained a judgment, procured a lien under Section 781 of the New York Civil Practice Act by the service of a subpoena on a third party. Under that state statute, the service of such a subpoena is a substitute for a judgment creditor's bill, Wickwire Spencer Steel Co. v. Kemkit Scientific Corp., 292 N.Y. 139, 54 N.E.2d 336, 153 A.L.R. 208, so that the resultant lien was obtained "through legal proceedings", i. e., judicial proceedings. For similar reasons, Sampsell v. Straub, 9 Cir., 194 F.2d 228, is inapposite. In each case, a judgment was the source of the creditor's lien.[2]

The petition, filed on February 4, 1954, and amended on February 6, 1954, also alleged the following: "Within four months next preceding the filing of this petition, the said alleged bankrupt committed an act of bankruptcy in that the alleged bankrupt did heretofore, to wit, on the 29th day of January, 1954, while insolvent and being unable and having failed, neglected and refused to pay its debts as they matured and having while so insolvent entered into an obligation to sell all of its assets to Camp Winslow, Inc., at a price of $25,000, which, as petitioners are informed and believe, is far below a fair consideration for the said property, which, as petitioners are informed and believe, is worth upwards of $65,000, and with intent to hinder, delay and defraud its creditors, did serve notice that on the 8th day of February, 1954, it would convey all of its merchandise and fixtures in bulk to Camp Winslow, Inc., as aforesaid." The petitioning creditors, in opposition to the debtor's motion to dismiss, filed an affidavit stating that they had received a notice from Camp Winslow, Inc., that the debtor "will sell all of its merchandise and fixtures in bulk for $25,000 to Camp Winslow, Inc. on February 8, 1954."

██ Because of the filing of the petition, this sale was not made. Accordingly, no act of bankruptcy occurred. For the pertinent part of Section 3, sub. a(1) [2a] says that an act of bankruptcy consists of the debtor "having * * * suffered a transfer of any of his property, fraudulent under the provisions of section 67. * * *"[3] Here no transfer had as yet been "suffered" when the petition was filed. True, Section 67, sub. d(5)[4] provides that if a transfer "is not * * * perfected prior to the filing of the petition * * * it shall be deemed to have been made immediately before the filing of such petition." However we think this contemplates a transfer whereby the debtor has passed his title to his transferee but which under State law is not effective as against a bona fide purchaser from the debtor until "perfected" by recording, filing, or the like. Section 3, sub. a(1) does not include a mere proposed future transfer, as here.

█ Petitioners, however, in effect assert that the debtor presumably had contracted to sell the property to Camp Winslow, and that Section 67, sub. d(2)—11 U.S.C.A. § 107, sub. d(2)— covers not only a "transfer made" but also to "an obligation incurred." It is doubtful whether the petition and the affidavit disclose that the debtor had "incurred" any "obligation." But assuming, *arguendo*, that they do so disclose, nevertheless we think there was

---

2. Cf. Section 67, sub. b—11 U.S.C.A. § 107, sub. b—which provides that, notwithstanding Section 60, 11 U.S.C.A. § 96—relating to preferences, statutory liens, in favor of contractors and mechanics, created or recognized by the laws of any state may be valid against the trustee even though they arise or are perfected while the debtor is insolvent and within four months of the filing of a bankruptcy petition.

2a. 11 U.S.C.A. § 21, sub. a (1).

3. 11 U.S.C.A. § 107.

4. 11 U.S.C.A. § 107, sub. d (5). It is not without significance that subdivision (5) is stated to apply only to "a transfer" as distinguished from subdivisions (3), (4) and (6) of Section 107, sub. d, which are stated to apply not only to transfers but also to obligations.

no act of bankruptcy. For Section 3, sub. a(1) refers to a "transfer"; significantly, it does not mention an "obligation incurred." The fact that a trustee in bankruptcy, under Section 67, sub. d(2), can set aside such an "obligation" as fraudulent does not render the incurring of the "obligation" an act of bankruptcy.[5]

Affirmed.

5. Cf. In re Carasaoljo Hotel Co., 3 Cir., 8 F.2d 469.